UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
OKAPI PARTNERS, LLC,

|  |  |
|---|---|
| Plaintiff, | 18-cv-6381 (PKC) |
| -against- | OPINION<br>AND ORDER |

JEFFREY T. HOLTMEIER and J. ROBERT
SMYJUNAS, JR.,

Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

Plaintiff Okapi Partners, LLC ("Okapi") brings this action to enforce a judgment

entered in its favor against Rx Investor Value Corporation ("Rx") in the Supreme Court of the

State of New York, New York County, on August 9, 2018 (the "Judgment"). Rx is not a

defendant in this case: according to Okapi, Rx has long been insolvent. Instead of proceeding

against Rx, Okapi commenced this action against defendants Jeffrey Holtmeier and J. Robert

Smyjunas, Jr. on the theory that Rx did not have an independent corporate identity and instead

functioned as defendants' corporate alter ego. Okapi alleges that defendants Holtmeier and

Smyjunas dominated and controlled Rx, that Rx did not observe basic corporate formalities and

that it was severely under-capitalized. Okapi also asserts that Holtmeier wrote a personal check

from his own bank account to Okapi on behalf of Rx.

Defendants move to dismiss the Amended Complaint (the "Complaint") for lack

of personal jurisdiction and for failure to state a claim pursuant to Rules 12(b)(2) and 12(b)(6),

Fed. R. Civ. P., or, alternatively, to transfer this action to the Southern District of Ohio pursuant

to 28 U.S.C. § 1404. It is axiomatic that on a Rule 12(b)(6) motion, the Court accepts as true all

factual allegations, and its review is limited to the Complaint and any documents integral thereto. See, e.g., Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554 (2007). For the reasons that will be explained, the Court concludes that the Complaint has adequately alleged that Rx was the defendants' corporate alter ego, and the defendants' motion to dismiss is denied. The Court also concludes that the defendants are subject to personal jurisdiction in New York, and that the transfer of this action is not warranted.

BACKGROUND.

Okapi is a company that performs proxy-solicitation services. (Compl't ¶ 2.) In August 2016, Rx and Okapi entered into an agreement (the "Agreement") wherein Okapi agreed to provide services to Rx in connection with defendants' campaign to gain control over the board of directors of HealthWarehouse.com, Inc. ("HealthWarehouse"), a publicly traded company. (Compl't ¶¶ 2, 13.) The Agreement was signed by Holtmeier in his capacity as CEO of Rx and by Bruce H. Goldfarb in his capacity as president and CEO of Okapi. (Holtmeier Dec. Ex. B.) Okapi's services included providing strategic advice, review and distribution of proxy materials, solicitation of institutional investors and preparation of contact lists, among other things. (Compl't ¶ 13.) The proxy campaign sought the election of four specific candidates to the HealthWarehouse board, one of whom was defendant Holtmeier. (Compl't ¶ 12.)

The Agreement included a Fees & Services Schedule (the "Schedule") that set forth the amounts Rx was to pay Okapi, and also included a provision for the reimbursement of Okapi's costs and expenses. (Compl't ¶¶ 14-15.) The Schedule provided that Okapi would receive $15,000 for certain defined "Campaign Services" and an additional amount in "Performance Fees" that is listed as "TBD." (Holtmeier Dec. Ex. B.) The "Performance Fees"

provision states: "Payable upon conclusion of the Campaign and to be mutually agreed and anticipated to be no less than 2X and up to 4X of the fee for Campaign Services." (Id.)

Okapi asserts that it performed under the Agreement and that defendants were successful in their proxy campaign to take control of HealthWarehouse. (Compl't ¶¶ 16, 25.) In a press release of September 7, 2016, Holtmeier stated that Okapi "contributed significantly to this favorable outcome . . . ." (Compl't ¶ 27.) In October 2016, Holtmeier was appointed president and CEO of HealthWarehouse. (Compl't ¶ 28.) He resigned the position on January 16, 2017. (Compl't ¶ 29.) Defendant Smyjunas was appointed to the HealthWarehouse board in February 2017. (Compl't ¶ 30.)

But, according to Okapi, Rx breached the Agreement by failing to pay the amounts due to Okapi. (Compl't ¶¶ 2-3, 23.) Okapi asserts that the fees for its services, plus costs and expenses, totaled $99,612.70, of which $31,000 has been paid, leaving a balance due of $68,612.70. (Compl't ¶¶ 19-22.)

In May 2017, Okapi commenced a breach of contract action against Rx in the New York Supreme Court, New York County. (Compl't ¶ 31.) Rx did not appear, and on February 27, 2018, a default judgment was entered in Okapi's favor in the amount of $83,612.70, plus an award of attorneys' fees later adjudicated to be in the amount of $21,762.37. (Compl't ¶¶ 32-35.) On August 9, 2018, judgment was entered in favor of Okapi against Rx in the amount of $119,538.83, which reflected damages, statutory interest and attorneys' fees. (Compl't ¶ 36.) On August 14, 2018, Okapi filed a partial satisfaction of judgment in the amount of $17,540.96. (Compl't ¶ 37.) According to Okapi, the Judgment remains unsatisfied in the amount of $101,997.87, plus post-judgment interest. (Compl't ¶ 38.)

The Complaint in this action names Holtmeier and Smyjunas as defendants and alleges that Rx is their corporate alter ego. (Compl't ¶¶ 39-59.) Okapi alleges that defendants were the sole officers and shareholders of Rx; that defendants "completely dominated and controlled" Rx; and alleges upon information and belief that Rx never had regular operating income and shared its office space with other companies affiliated with defendants. (Compl't ¶¶ 40-43.) It alleges that Rx held total assets worth approximately $319, consisting of 1,100 shares of HealthWarehouse valued at $0.29 per share, all of which were conveyed to Rx by defendants. (Compl't ¶¶ 44-45.) Okapi alleges that Rx was entirely dependent on the defendants' capital contributions, and that defendants intentionally left Okapi undercapitalized. (Compl't ¶¶ 48-49.) Okapi alleges that defendant Holtmeier paid Okapi $10,000 due under the Agreement through a personal check from his personal bank account, which it states is evidence that defendants comingled their own funds with those of Rx. (Compl't ¶ 52.) Okapi alleges that it has never received a payment from Rx, and has only received payments from Holtmeier and HealthWarehouse. (Compl't ¶ 53.)

According to Okapi, defendants intentionally kept Rx insolvent in order to shield the assets of Rx and the defendants. (Compl't ¶ 55.) Rx allegedly failed to pay corporate taxes and fees, and public records of the Delaware Secretary of State describe RX's status as "Void, AR's or Tax Delinquent, 3-01-2018." (Compl't ¶¶ 57-58.)

The Complaint asserts three claims. Count One is captioned "Enforcement of the Judgment based on Alter Ego Liability." (Compl't ¶¶ 60-69.) Count Two alleges breach of contract, and Count Three alleges unjust enrichment. (Compl't ¶¶ 70-83.)

Okapi originally filed this action in the New York Supreme Court, New York County, and defendants removed to federal court on the grounds that there is complete diversity

of citizenship and that the amount in controversy exceeds $75,000. (Docket # 1.) Defendants are alleged to be citizens of Ohio, and the membership of Okapi is alleged to consist of New York citizens and to have no members who are citizens of Ohio. (Docket # 1.)

MOTION TO DISMISS STANDARD.

Defendants have moved to dismiss the case for lack of personal jurisdiction pursuant to Rule 12(b)(2) and for failure to state a claim pursuant to Rule 12(b)(6).

Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). In assessing the sufficiency of a pleading, a court must disregard legal conclusions, which are not entitled to the presumption of truth. Id. Instead, the Court must examine the well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208-09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has personal jurisdiction over the defendant. Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34-35 (2d Cir. 2010). The nature of the plaintiff's obligation "varies depending on the procedural posture of the litigation." Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 84 (2d Cir. 2013). If the court considers only the pleadings and affidavits on the motion to dismiss, "the plaintiff need only make a prima facie showing of personal jurisdiction over defendant." CutCo Industries, Inc. v. Naughton, 806 F.2d

361, 364 (2d Cir. 1986).  On a motion pursuant to Rule 12(b)(2), courts may rely on materials

outside the pleadings.  See DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001).

Personal jurisdiction may be exercised over any defendant "who is subject to the

jurisdiction of a court of general jurisdiction in the state where the district court is located."  Rule

4(k)(1)(A), Fed. R. Civ. P.  If plaintiff is able to establish a factual predicate for jurisdiction

under the laws of the forum state – here, New York – then the court must consider whether the

exercise of jurisdiction is consistent with due process.  Wiwa v. Royal Dutch Petroleum Co., 226

F.3d 88, 94 (2d Cir. 2000).

DISCUSSION.

I.     The Motion to Dismiss for Failure to State a Claim Is Denied.

A.   The Complaint Adequately Alleges that Rx Was Defendants' Alter Ego.

Defendants argue that the Complaint does not include facts sufficient to allege

that Rx functioned as their corporate alter ego.  They urge that to the extent Okapi's claims are

premised on alter ego status and piercing the corporate veil, the Complaint should be dismissed.[1]

A corporation may have the status of an alter ego if, among other things, it fails to

observe corporate formalities, does not have independent funds and is not treated as an

independent profit center.  Miller v. Cohen, 93 A.D.3d 424, 425 (1st Dep't 2012).  The corporate

veil of an alter ego corporation may be pierced, including in circumstances where judgment has

been entered against the corporation in a prior action.  See id.  "The doctrine of piercing the

corporate veil is typically employed by a third party seeking to go behind the corporate existence

---

[1] Because defendants' motion to dismiss for lack of personal jurisdiction turns heavily on the issue of whether Rx is
adequately alleged to be defendants' alter ego, the Court addresses their Rule 12(b)(6) motion before deciding their
arguments raised under Rule 12(b)(2).  See, e.g., ONY, Inc. v. Cornerstone Therapeutics, Inc., 720 F.3d 490, 498 n.6
(2d Cir. 2013).

in order to circumvent the limited liability of the owners and to hold them liable for some

underlying corporate obligation." Morris v. New York State Dep't of Taxation & Fin., 82

N.Y.2d 135, 140-41 (1993).[2] "Generally . . . piercing the corporate veil requires a showing that:

(1) the owners exercised complete domination of the corporation in respect to the transaction

attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff

which resulted in plaintiff's injury." Id. at 141. "Factors to be considered in determining

whether the owner has abused the privilege of doing business in the corporate form include

whether there was a failure to adhere to corporate formalities, inadequate capitalization,

commingling of assets, and use of corporate funds for personal use." D'Mel & Assocs. v. Athco,

Inc., 105 A.D.3d 451, 452 (1st Dep't 2013) (quotation marks omitted); see also Commissioners

of State Ins. Fund v. Ramos, 80 A.D.3d 447, 447-48 (1st Dep't 2011) (affirming denial of

summary judgment motion when several questions of fact existed about the extent of defendants'

domination and control over judgment debtor claimed to be an alter ego).

   Where veil-piercing claims sound in fraud, the plaintiff must satisfy the

heightened pleading standard of Rule 9(b), Fed. R. Civ. P.; otherwise, the notice-pleading

standard of Rule 8 applies. See, e.g., United Feature Syndicate, Inc. v. Miller Features

Syndicate, Inc., 216 F. Supp. 2d 198, 222-23 (S.D.N.Y. 2002) (Lynch, J.). "[T]he heightened

pleading standard in Fed. R. Civ. P. 9(b) need not be met in every case in which a claimant seeks

to lift the corporate veil under New York law, since 'New York courts will disregard the veil . . .

either when there is fraud or when the corporation has been used as an alter ego,' and under the

alter ego theory of liability, a veil-piercing claimant may prevail by 'identify[ing] some non-

fraudulent 'wrong' attributable to the defendant's complete domination' of the corporation in

---

[2] The parties agree that on the issue of corporate veil-piercing, the laws of Delaware, where Rx is incorporated, "are in complete accord with New York law." (Def. Mem. at 14-15; Opp. Mem. at 5 n.2.)

question." Id. at 223 (quoting Rolls-Royce Motor Cars, Inc. v. Schudroff, 929 F. Supp. 117, 121-22 (S.D.N.Y. 1996) (Mukasey, J.)).  As explained by the First Department:

> Wrongdoing in this context does not necessarily require allegations of actual fraud.  While fraud certainly satisfies the wrongdoing requirement, other claims of inequity or malfeasance will also suffice.  Allegations that corporate funds were purposefully diverted to make it judgment proof or that a corporation was dissolved without making appropriate reserves for contingent liabilities are sufficient to satisfy the pleading requirement of wrongdoing which is necessary to pierce the corporate veil on an alter-ego theory.

Baby Phat Holding Co., LLC v. Kellwood Co., 123 A.D.3d 405, 407-08 (1st Dep't 2014).

The allegations here describe the type of non-fraudulent "inequity or malfeasance" that the First Department deemed sufficient to allege alter-ego liability.  Okapi alleges that the individual defendants were the sole officers and shareholders of Rx, and that Rx had total assets of approximately $319.  (Compl't ¶¶ 40, 45.)  Rx allegedly had no other assets and no bank account of its own.  (Compl't ¶ 46.)  It is alleged to have relied wholly on the defendants' capital contributions in order to meet its obligations.  (Compl't ¶ 48.)  These allegations are supported by the specific factual assertion that defendant Holtmeier paid $10,000 due under the Agreement with a personal check from his personal bank account, and the allegation that Rx itself made no payments due to Okapi under the Agreement.  (Compl't ¶¶ 52-53.)  The use of Holtmeier's personal funds to make a payment on behalf of Rx is a specific allegation of fact that goes toward alter ego status.  Rx's insolvency and Okapi's inability to collect judgment against it are also specific facts that bear directly on whether Okapi has adequately alleged alter ego status: Okapi commenced its state court action against Rx in May 2017, default judgment against Rx was granted in Okapi's favor in February 2018, but, as of

March 1, 2018, Rx's status as a corporation was listed as "Void, AR's or Tax Delinquent, 3-01-2018" by the Delaware Secretary of State. (Compl't ¶¶ 31, 33, 57, 58.)[3]

Defendants vigorously dispute that Rx was their corporate alter ego. They argue that Okapi seeks to "eviscerate[ ] the doctrine of limited liability" that comes with the corporate form, and state that Okapi's action and the entry of default judgment in New York state court were an attempt "to manufacture a factual predicate to this collection case." (Def. Mem. at 4, 9.) They repeatedly dispute that Okapi was entitled to an additional "performance fee" described in the Schedule to the Agreement. Defendants seem to suggest that Rx was formed solely for the purpose of soliciting proxies in connection with HealthWarehouse's annual meeting of August 2016, and describe Okapi's claim for additional fees as a "ransom demand." (Def. Mem. 15-16.) But defendants' challenges to Okapi's factual allegations and their disagreement as to the merits are appropriately resolved at summary judgment or trial, and not at the motion to dismiss stage.

Accepting the truth of the Complaint's allegations and drawing every reasonable inference in favor of Okapi as the plaintiff, the Complaint adequately alleges that Rx was a corporate alter ego of the defendants. Defendants' motion to dismiss Okapi's claims premised on Rx's alter ego status is therefore denied.

B. The Complaint Adequately Alleges a Claim of Unjust Enrichment.

Defendants also move to dismiss Okapi's claim of unjust enrichment. The unjust enrichment claim asserts that through Okapi's services, defendants obtained salaried positions at

---

[3] Even if the Court were to apply the heightened pleading standard of Rule 9(b), other courts in this District have concluded that fraud has been pleaded with sufficient particularity where a "[p]laintiff has adequately linked its inability to collect on its judgment to affirmative acts taken by Defendants . . . that were effected by Defendants' domination of the judgment debtors." See, e.g., Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc., 39 F. Supp. 3d 516, 526-27 (S.D.N.Y. 2014) (Nathan, J.) (concluding that plaintiff adequately alleged veil-piercing claim against judgment debtors under either Rule 8 or Rule 9(b)) (citing Godwin Realty Assocs. v. CATV Enterprises, Inc., 275 A.D.2d 269, 270 (2d Dep't 2000) ("The stripping of corporate assets by shareholders to render the corporation judgment proof constitutes a fraud or wrong justifying piercing the corporate veil.")).

HealthWarehouse, but thereafter used their domination and control of Rx to prevent Okapi from enforcing contractual rights against Rx. (Compl't ¶¶ 79-80.) Okapi alleges that defendants personally directed the services performed by Okapi and benefited from those services without paying the agreed-upon compensation. (Compl't ¶¶ 77-78.)

Defendants do not urge that the unjust enrichment claim should be dismissed because it is duplicative of the Complaint's breach of contract claim. Instead, they principally argue that because Okapi performed services on behalf of Rx, any claim of unjust enrichment should be directed to Rx and not the defendants. However, because the Court concludes that the Complaint adequate alleges facts that support Okapi's alter ego allegations, Okapi's claim that the individual defendants were unjustly enriched by Okapi's performance may proceed.

Defendants also argue that because any compensation they received came from HealthWarehouse and not Okapi, Okapi cannot plausibly allege that defendants were enriched at Okapi's expense. But the Complaint alleges that defendants received the benefit of Okapi's proxy-solicitation services without compensation, which is sufficient to allege a claim for unjust enrichment. See, e.g., E. Consol. Properties, Inc. v. Waterbridge Capital LLC, 149 A.D.3d 444, 444 (1st Dep't 2017) (plaintiff pleaded a valid claim for unjust enrichment "since it alleges that it performed valuable services in good faith, . . . that the services were rendered with an expectation of compensation, and that they were accepted by defendants.").

Defendants' motion to dismiss the unjust enrichment claim is denied.

II.     The Motion to Dismiss for Lack of Personal Jurisdiction Is Denied.

Defendants separately move to dismiss the Complaint pursuant to Rule 12(b)(2), and urge that this Court does not have personal jurisdiction over them. They urge that this Court

does not have jurisdiction pursuant to New York's long-arm statute, CPLR 302(a)(1), and that even if it does, the exercise of jurisdiction would not satisfy due process.

The Agreement includes a forum-selection clause in which Rx and Okapi consented to New York jurisdiction. It states in its entirety:

> This Agreement shall be governed by the substantive laws of the State of New York without regard to its principles of conflicts of laws, and shall not be modified in any way, unless pursuant to a written agreement which has been executed by each of the parties hereto. The parties agree that any and all disputes, controversies or claims arising out of or relating to this Agreement (including any breach hereof) shall be subject to the exclusive jurisdiction of the federal and state courts in New York County, New York and the parties hereby consent to the jurisdiction of such courts and waive any defenses on the grounds of lack of personal jurisdiction of such courts, improper venue or forum non conveniens.

(Agrm't ¶ (f).) Because Rx consented to New York jurisdiction and the Complaint adequately alleges that Rx is defendants' alter ego, Okapi has adequately demonstrated, at the pleading stage, that defendants are subject to personal jurisdiction in New York. See William Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 142-43 (2d Cir. 1991) ("if the plaintiffs in this case can prove the defendants are in fact the alter ego of Developers, defendants jurisdictional objection evaporates because the previous judgment is then being enforced against entities who were, in essence, parties to the underlying dispute; the alter egos are treated as one entity."); Packer v. TDI Sys., Inc., 959 F. Supp. 192, 202 (S.D.N.Y. 1997) ("A corporation's consent to jurisdiction under a forum selection clause can be applied to obtain jurisdiction over an individual officer by disregarding the corporate entity under the doctrine of piercing the corporate veil.") (Leisure, J.).

Similarly, because Rx, as defendants' alleged alter ego, consented to jurisdiction in New York, the due process concerns raised by defendants at the pleading stage are unavailing.

See, e.g., S. New England Tel. Co. v. Glob. NAPs Inc., 624 F.3d 123, 138 (2d Cir. 2010)

(allegations of corporate alter ego status "if established, would clearly support a finding of

personal jurisdiction. It is also well established that the exercise of personal jurisdiction over an

alter ego corporation does not offend due process.").

       Defendants' motion to dismiss for lack of personal jurisdiction is therefore

denied.

III.      <u>The Motion to Transfer Is Denied.</u>

       Defendants separately move to transfer this case to the Southern District of Ohio

pursuant to 28 U.S.C. § 1404. They urge that transfer is warranted because they reside in

Cincinnati and evidence concerning the corporate formalities of Rx is located in Cincinnati.

They also note that HealthWarehouse is based in Florence, Kentucky, which is described as "a

small neighboring community" of Cincinnati. (Def. Mem. 17.)

       A district court may transfer an action for the convenience of the parties and

witnesses if transfer is in the interest of justice. 28 U.S.C. § 1404(a). A district court has "broad

discretion" to decide whether transfer is appropriate. <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S.

22, 32 (1988). "Some of the factors a district court is to consider are, <u>inter alia</u>: (1) the plaintiff's

choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and

relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of

operative facts, (6) the availability of process to compel the attendance of unwilling witnesses,

[and] (7) the relative means of the parties." <u>D.H. Blair & Co. v. Gottdiener</u>, 462 F.3d 95, 106-07

(2d Cir. 2006) (quotation marks omitted). A plaintiff's choice of forum "is given great weight."

<u>Id.</u> at 107. "A forum-selection clause should receive neither dispositive consideration . . . nor no

consideration . . . ." <u>Stewart Org.</u>, 487 U.S. at 31.

Transfer is not warranted in this case. While there would be some conveniences to litigating this case in Ohio, the Court affords considerable weight to the plaintiff's choice of forum, as well as the forum-selection clause agreed to between Rx and Okapi. The parties to the Agreement consented to jurisdiction and venue in New York. Okapi and its employees are located in New York and the Complaint seeks to enforce a judgment entered by a New York court. Okapi performed its services in New York, and any damages it suffered arose in New York. There is no contention that defendants lack the resources to litigate this case in New York.

Defendants' motion to transfer is therefore denied.

CONCLUSION.

Defendants' motion to dismiss the Complaint or transfer this case is DENIED. The Clerk is directed to terminate the motion. (Docket # 24.)

There will be a pretrial conference in this case on May 29, 2019 at 11:30 a.m.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       April 8, 2019